FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

03 APR 29 AM 9:52

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| JOAN M. HIGGINBOTHAM, deceased, ) | |
| by and through her personal representative, ) | |
| widower JERRY HIGGINBOTHAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 01-JEO-0478-S |
| ) | |
| BARD ACCESS SYSTEMS, INC., ) | |
| ) | |
| Defendant. ) | |

**ENTERED**

**APR 29 2003**

### MEMORANDUM OPINION

Joan M. Higginbotham (hereinafter "Higginbotham" or "the plaintiff") originally filed this action asserting that Bard Access Systems, Inc. (hereinafter "Bard" or "the defendant"), negligently manufactured and put into the stream of commerce a defective Bard catheter. (Doc. 1). The plaintiff commenced this action under the Alabama Extended Manufacturer's Liability Doctrine (hereinafter "AEMLD"). Following her death, her widower, Jerry Higginbotham, was substituted as the party plaintiff on her behalf. The case is presently before the court on the defendant's motion for summary judgment on the plaintiff's claims. (Doc. 42). Upon consideration of the motion, the court finds that it is due to be granted.

### Facts[1]

Due to a long history of illness, Joan Higginbotham had "run out of veins" and thus required a catheter to ensure delivery of medications, intravenous fluids, and blood products

---

[1] The facts set out below are gleaned from the parties' submissions and are viewed in the light most favorable to the plaintiff. They are the "'facts' for summary judgment purposes only. They may not be the actual facts. *See Cox v. Administrator v. U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994)." *Underwood v. Life Insurance of Georgia*, 14 F. Supp. 2d 1266, 1267 n.1 (N.D. Ala. 1998).

needed for her treatment. (Dr. Richard Kirkland Dep. (hereinafter "Kirkland Dep.") at 12).[2] On December 29, 1998, Dr. Richard Kirkland[3] (hereinafter "Kirkland") implanted a catheter manufactured by the defendant in Joan Higginbotham. (Doc. 1 at p. 3). The catheter at issue is an implantable device consisting of a plastic injection port, a loose cath-lock, and a section of catheter tubing. (Affidavit of Glenn Norton (hereinafter "Norton Aff.") at ¶ 6).[4] Prior to the implantation, Kirkland discussed with Joan Higginbotham some of the risks associated with the procedure and device. (Joan Higginbotham Dep. (hereinafter "Plaintiff's Dep.") at 32).[5] Kirkland, however, did not warn her about the possibility of separation of the catheter and port[6] because he had "never seen a port-catheter separation" previously. (Kirkland Aff. at ¶ 5). Mrs. Higginbotham, a former nurse, thereafter authorized the implantation of the catheter by signing a written consent that acknowledged the procedure's possible complications and alternatives. (Plaintiff's Dep. at p. 32).

On March 2, 1999,[7] Joan Higginbotham experienced "excruciating pain" in her chest causing her husband to take her to the emergency room. (Plaintiff's Dep. at 34-35). Her

---

[2] Kirkland's deposition is located at document 43, exhibit D.

[3] The plaintiff's complaint identifies "Dr. James K. Kirklin, M.D." as the surgeon who implanted the catheter, but the affidavit and deposition of Dr. Richard Kirkland show that he was the surgeon who implanted the device. (Doc. 1 at ¶ B-5; Doc. 43 at Ex. D; Doc. 51 at Ex. 1).

[4] Norton's Affidavit is located at document 43, exhibit B.

[5] Joan Higginbotham's deposition is located at document 43, exhibit E.

[6] Joan Higginbotham stated in her deposition, "I'm sure he did, but at that particular time, I was hurting," in response to the question, "Do you recall whether Dr. Kirkland ever told you that one potential complication of an implantation of a portacath (sic) was the possible separation of the catheter and the port." (Plaintiff's Dep. at 34). However, in viewing the facts in the light most favorable to the plaintiff, the court will follow the statements of Dr. Kirkland in his affidavit that no such specific warning was made.

[7] The complaint states that "the Bard catheter broke" on March 2, 1999. (Doc. 1 at ¶ B-6). The waiver signed by Joan Higginbotham, allowing the "intravascular retrieval of foreign body (porta cath catheter) from right atrium," and corresponding medical records are dated March 6, 1999. (Doc. 51 at Ex. 5).

2

attending physician, Dr. Ronald McCoy (hereinafter "McCoy"), was called by emergency room personnel. (*Id.* at 38). McCoy ordered a series of x-rays which showed the catheter had disengaged from the port and migrated to Mrs. Higginbotham's heart. (*Id.*). A surgical procedure was then performed in the radiology department where the catheter was retrieved from her heart through a femoral vein while she was awake under local anesthesia. (Ronald McCoy Dep. (hereinafter "McCoy Dep.") at 16).[8] A matter of hours passed from her arrival at the emergency room to the removal of the catheter. (Plaintiff's Dep. at 38).

On June 2, 1999, Mrs. Higginbotham underwent surgery to remove the port from the "Port-A-Cath" that had disengaged in March. (Doc. 51, Ex. 5). McCoy's operative notes identify the procedure as "removal of Port-A-Cath post embolization of catheter to the right atrium with advancement flap closure." (*Id.*).

On September 4, 2002, Mrs. Higginbotham was deposed and stated that she still had nightmares about the pain and emergency procedure performed to remove the catheter. (Doc. 51 at p. 18).

Glenn Norton, a Senior Regulatory Affairs Specialist for the defendant, states in his affidavit that no defects existed in the catheter at issue, but that the markings on the catheter lacked the normal depth that usually indicates a complete cath-lock engagement. (Norton Aff. at ¶¶ 1, 4, 7-12). Norton further asserts in his affidavit that "the catheter appears to have separated from the port due to inadequate engagement of the catheter and/or catheter lock." (*Id.* at ¶ 11).

The plaintiff did not submit any expert evaluation of the catheter, but did provide an affidavit from Kirkland which states that he visually inspected the catheter prior to implantation

---

[8] McCoy's deposition is located at document 43, exhibit C.

and that he followed the manufacturer's recommended procedures during the surgery. (Kirkland Aff. at ¶¶ 2, 6, 7, 9-10).

**PROCEDURAL HISTORY**

The present complaint was filed on February 22, 2001. (Doc. 1). On May 30, 2001, the parties consented to this court's jurisdiction for disposition of this matter. (Doc. 10).

On October 19, 2001, counsel for the plaintiff filed a motion to compel production of "copies of every sales brochure, flyer, or product insert which [defendant] caused to be published or distributed at any time between January 1, 1996, and December 29, 1998, which describes, in any manner, the Bard catheter which underlies this litigation;" "five complete . . . exemplars of the Bard catheter;" "a true copy of defendant's organizational chart, with names of each holder of a management position;" and "a true copy of each report [the defendant] has submitted under the 'Medical Device Reporting Act' to the U.S. Food and Drug Administration with regard to any medical devices which are used for intravenous injection of medicinal fluids, such as the Bard catheter." (Doc. 24). On October 30, 2001, the defendant filed a motion for protective order to "(1) protect[] the confidentiality of certain documents which [defendant] is producing in this matter;" and to "(2) protect[] Bard from being required to produce five exemplar catheters for plaintiff's use." The defendant also filed a supporting brief and a proposed order. (Doc. 26).

On November 1, 2001, this court granted in part and denied in part the plaintiff's motion to compel and granted the defendant's motion for a protective order. (Doc. 29). The court ordered the defendant to produce the organizational chart and documentation showing the reporting to the FDA of similar claims against it and purported product failures within the last five years, and to make available to counsel one complete exemplar catheter "available for

4

plaintiff, her counsel, and her experts at the office of its [(Bard's)] Birmingham counsel." (*Id.*). The court further ordered that should the plaintiff's counsel need additional exemplar catheters, the defendant would be required to produce up to two additional, complete exemplar catheters at the plaintiff's expense. (*Id.*).

The plaintiff's counsel filed a motion for reconsideration of the protective order limiting production of catheter units. (Doc. 31). On November 9, 2001, this court granted the motion for reconsideration and modified the previous order by permitting the plaintiff to have the catheters outside of the attorney's office and by requiring the production of five catheters by the defense for the plaintiff's use. (Doc. 32).

On June 12, 2002, the defendant filed a motion to extend discovery to August 28, 2002. That motion was granted by this court on June 13, 2002. The discovery deadline was extended again on August 21, 2002, to September 27, 2002. On September 19, 2002, this court extended the deadline for dispositive motions until October 21, 2002.

On September 26, 2002, Joan Higginbotham died. The defendant filed a suggestion of death with the court on October 2, 2002. (Doc. 38). On November 29, 2002, counsel for the plaintiff filed a notice of substitution of widower Jerry Higginbotham as personal representative of the deceased plaintiff. (Doc. 41).

On January 31, 2003, the defendant filed its motion for summary judgment and its supporting brief. (Doc. 42 & 43). On February 4, 2003, this court ordered any response by the plaintiff must be filed by February 18, 2003, and defendant's reply to be filed by March 4, 2003. (Doc. 44).

On February 12, 2003, the plaintiff's counsel filed a motion to vacate a portion of this

court's February 4, 2003, order permitting the defendant to file a reply. (Doc. 45). On February 14, 2003, this court denied the motion to vacate. (Doc. 47). On February 21, 2003, the plaintiff filed a motion for reconsideration of court's denial of his motion to vacate the order permitting the defendant to reply and a request for a Certificate of Appealability. (Doc. 49). The court denied the second request to disallow the defendant an opportunity to file a reply and denied the plaintiff's request for a Certificate of Appealability. (Doc. 50).

On March 4, 2003, the plaintiff filed a brief in opposition to the defendant's motion for summary judgment. (Doc. 51). On March 17, 2003, the defendant's reply to that brief was submitted to the court. (Doc. 52).

## MOTION FOR SUMMARY JUDGMENT

### Summary Judgment Standard

Summary judgment is to be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the declarations, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The party seeking summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970).

The movant can meet this burden by presenting evidence showing there is no dispute of

material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. *See* FED. R. CIV. P. 56(a) and (b). Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. The nonmoving party need not present evidence in a form necessary for admission at trial; however, the movant may not merely rest on the pleadings. *Id.*

After a motion has been responded to, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. A judge's guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 259. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as

to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

The court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury and, therefore, the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988). "If reasonable minds could differ on the inferences arising from the undisputed facts, then a court should deny summary judgment." *Allen v. Tyson Foods*, 121 F.3d 642 (11th Cir. 1997).

### The AEMLD

Under Alabama law, the AEMLD is the sole cause of action for negligence when the factual basis for the claim is that the defendant moved a defective product into the stream of commerce. *Pitts v. Dow Chemical Co.*, 859 F. Supp. 543, 551 (M.D. Ala. 1994). In *Beam v. Tramco, Inc.*, 655 So. 2d 979, 981 (Ala. 1995), the Alabama Supreme Court held as follows:

> To establish a prima facie case under the AEMLD, Plaintiff must show: (1) that [the defendant manufacturer] manufactured, designed or sold a defective, unreasonably dangerous product; (2) that the product reached the consumer in substantially the same condition in which it was sold; and (3) that the product injured the consumer when it was put to its intended use.

*Cooper v. Toshiba Home Tech. Corp.*, 76 F. Supp. 2d 1269, 1276 (M.D. Ala. 1999). Further, a

8

defective product is defined as "one that is unreasonably dangerous, *i.e.*, one that is not fit for its intended purpose or that does not meet the reasonable expectations of the parties." *Beam*, 655 So. 2d at 981. While "it makes no difference whether it is dangerous by design or defect," the determinative factor is "whether it is safe or dangerous when . . . used as it was intended to be used." *Casrell v. Altec Indus., Inc.*, 335 So. 2d 128, 133 (Ala. 1976).

"'The historical and traditional purpose of tort law has been to protect persons against unreasonable risks,' and therefore, 'the defendant manufacturer must pay the consequences of placing an unreasonably dangerous or defective product on the market.'" *Bean v. BIC Corp.*, 597 So. 2d 1350, 1352 (Ala. 1992) (quoting *Casrell v. Altec Industries, Inc.*, 335 So. 2d 128, 131 (Ala. 1976)). The purpose of the AEMLD is to protect consumers from injuries caused by defective products. *Dennis By and Through Dennis v. American Honda Motor Co., Inc.*, 585 So. 2d 1336, 1339 (Ala. 1991). "Under the Alabama extended manufacturer's liability doctrine, a manufacturer has the duty to design and manufacture a product that is reasonably safe for its intended purposes and uses." *Brooks v. Colonial Chevrolet-Buick, Inc.*, 579 So. 2d 1328, 1331 (Ala. 1991). "However, the manufacturer of a product is not an insurer against all harm that might be caused by the use of the product, and the manufacturer or designer is not obligated to produce an accident-proof or injury-proof product." *Brooks v. Colonial Chevrolet-Buick, Inc.*, 579 So. 2d 1328, 1331 (Ala. 1991) (citing *Casrell v. Altec Industries, Inc.*, 335 So. 2d 128 (Ala. 1976); *Atkins v. American Motor Corp.*, 335 So. 2d 134 (Ala. 1976); *Martinez v. Dixie Carriers, Inc.*, 529 F.2d 457 (5th Cir. 1976)).

The AEMLD is not based on a theory of strict liability; it retains a fault concept. *Cain v. Sheraton Perimeter Park South Hotel*, 592 So. 2d 218, 220 (Ala. 1991) (citing *Atkins v.*

*American Motor Corp.*, 335 So. 2d 134 (Ala. 1976)). Mere proof that accident occurred with resulting injuries is insufficient to establish fault under the AEMLD. Rather, because the AEMLD is a fault-based cause of action, the plaintiff must affirmatively show that the product was sold with a defect or in a defective condition. *Jordan v. General Motors Corp.*, 581 So. 2d 835 (Ala. 1991). "Plaintiff bears the burden of proving that the product was in a defective condition when it left the defendant's control. Without evidence to support the conclusion that the product was defective and/or unreasonably dangerous when it left the hands of the seller, the burden is not sustained." *Jordan*, 581 So. 2d at 837 (citing *Sapp v. Beech Aircraft Corp.*, 564 So. 2d 418 (Ala. 1990)). "Mere proof that an accident and injuries occurred is not enough to establish a prima facie case under the AEMLD." *Kirk v. Garrett Ford Tractor, Inc.*, 650 So. 2d 865 (Ala. 1994) (citing *Jordan*, 581 So. 2d at 836).

## Discussion

The plaintiff herein appears to be asserting that liability may be imposed upon the defendant in this action premised on the fact that the product was defective (*see* doc. 51 at 71, 77) and that the warning was deficient as well because it does not list "catheter-port separation" as a "possible 'complication'" (*id*. at 81). The parties disagree over what is required when addressing the summary judgment motion. The defendant asserts that expert testimony is "ordinarily required in a case like this when the product is of a technical and complex nature." (Doc. 43 at 8). The defendant further asserts that the plaintiff's failure to offer any expert testimony in this case showing that the product is defective is fatal. (*Id*. at 11). The plaintiff asserts that an expert is not necessary in this case and Kirkland's affidavit is sufficient to warrant a determination of the issues by a jury. (*Id*. at 71).

The defendant correctly asserts in his brief that expert testimony is ordinarily necessary to prove an alleged defect when the product is of a technical and complex nature. (Doc. 43 at 8 (citing *Brooks v. Colonial Chevrolet-Buick, Inc.*, 579 So. 2d 1328, 1332 (Ala. 1991) (brake failure); *Townsend v. General Motors Corp.*, 642 So. 2d 411, 415 (Ala. 1994) (complex braking system); *Sears Roebuck Co. v. Haven Hill Farm, Inc.*, 395 So. 2d 991 (Ala. 1981) (tire blowout)).[9] A jury cannot be allowed to speculate that a defective condition of the product caused the product's failure and the resulting injury to the plaintiff. There must be some evidence to support such a conclusion to allow the matter to be submitted to a jury.

There will be certain instances, however, under the AEMLD where a reasonable jury can infer from the attendant circumstances, without the aid of expert testimony, that a plaintiff's injuries resulted from a product's unreasonably dangerous condition. For instance, the Eleventh Circuit has held that a paraplegic who suffered foot burns when his motor home floorboard overheated during a six hour drive did not need to show the exact cause of the high temperature. *Goree v. Winnebago Industries, Inc.*, 958 F.2d 1537, 1541 (11th Cir. 1992). While expert testimony may be necessary when the product alleged to be defective is complex and technical in nature, expert testimony is not required when a jury could reasonably infer from the product's failure under all the attendant circumstances that its defective condition caused the plaintiff's injury. *Goree*, 958 F.2d at 1541. The court stated:

> We also conclude that the district court overstated its case when it held that expert testimony is always required to establish a defect under the AEMLD. While such testimony may be necessary when the product alleged to be defective

---

[9] The defendant also cites *Turner v. Daimler Chrysler Corporation*, 2000 U.S. Dist. LEXIS 182444, *6-7 (S.D. Ala. 2000) (airbag restraint system) and *Howze v. Toyota Motor Corporation*, 2000 U.S. Dist. LEXIS 1954, *6-8 (S.D. Ala. 2000) (automobile not crashworthy); *Cooper v. Toshiba Home Tech. Corp.*, 76 F. Supp. 2d 1269, 1276 (M.D. Ala. 1999) (kerosene heater). *See also Verchot v. General Mortors Corp.*, 812 So. 2d 296 (Ala. 2001) (master cylinder break failure).

is complex and technical in nature, expert testimony is not required when a jury could reasonably infer from the product's failure "under all the attendant circumstances" that its defective condition caused the plaintiff's injury. *Brooks v. Colonial Chevrolet-Buick, Inc.*, 579 So. 2d 1328 (Ala. 1991); *Sears, Roebuck*, 395 So. 2d at 995. The plaintiff establishes a prima facie case as long as he provides sufficient evidence from which the jury could deduce that the product was defective, and that his injury was caused by the defect.

*Goree*, 958 F.2d at 1541.

The court finds that under the circumstances in this case, the evidence of a product defect is insufficient to submit this case to a jury. To the extent that the plaintiff contends that the device in this case is not so complex or technical that expert testimony is not required to demonstrate a defect, the court disagrees. The plaintiff asserts that the device at issue consists of only three pieces and "any reasonably intelligent lay person can connect them and understand their relationship." (Doc. 51 at 71). While the court recognizes the plaintiff's argument that any reasonably intelligent person could understand the basic mechanism of the catheter itself, it is the catheter's function in the human body that makes an otherwise seemingly simple device complex. The court finds that some expert testimony is necessary under the facts of this case to establish a defect. There is no evidence of how or why the catheter malfunctioned, or how a different design would have prevented such a risk. Absent expert testimony, at the very least, the plaintiff must show the product was defective by some attendant circumstances or reasonable inference. The plaintiff simply has not met that burden.

The plaintiff has offered nothing to refute the testimony of the defendant's expert's opinion that design defect was not the cause of the separation. The plaintiff asserts that his role is not to try the case before the trial; but in a motion for summary judgment, the burden does shift to the plaintiff to assert a genuine issue of material fact. In opposition to the motion for summary

judgment, the plaintiff simply offers Kirkland's affidavit. Although Kirkland asserts that the device was used properly, this is not a sufficient explanation to allow this matter to proceed.[10] Kirkland does dispute Norton's assertion that the problem was user error; however, there is still no evidence that the catheter was defective. Accordingly, the defendant's motion for summary judgment is due to be granted.

This case is different than the situation in *Goree* for a number of reasons. First, the *Goree* court concluded that, "[a]lthough the Winnebago Chieftain may be characterized as a complex and technical piece of machinery, Goree . . . [did] not have to show the exact cause of the high temperatures, only that the Chieftain is unreasonably dangerous" and that he did meet this burden. *Goree*, 958 F.2d at 1541. In the present case, the plaintiff has offered nothing other than Kirkland's affidavit which does not establish that the catheter in this case is unreasonably dangerous. Second, in *Goree*, the plaintiff offered two experts whose testimony indicated that the Chieftain's floorboard temperatures climbed to levels capable of causing burn injuries and he offered testimony that the defective condition could have been alleviated by the installation of a twenty-five dollar heat shield. The court found that this evidence was sufficient to show a specific defect in the product and for a jury to conclude that the Chieftain's unreasonably dangerous condition was the cause of Goree's injury. *Goree*, 958 F.2d at 1541-42. Kirkland's evidence does not rise to this level. Nothing in his affidavit shows or allows a reasonable inference that the catheter was unreasonably dangerous. In this case, the court is left with the fact of a separation and an injury without anything more. This proof is simply insufficient to

---

[10]The court notes that it has afforded the plaintiff a full opportunity to examine the catheters, to obtain expert testimony, and to pursue discovery of any other reports of similar instances.

overcome the defendant's motion. *See Verchot*, 812 So. 2d at 303 (speculative evidence does not create a genuine issue of material fact to overcome a motion for summary judgment in an AEMLD master cylinder brake failure case).

The current case is somewhat analogous to the situation in *Cather v. Catheter Technology Corp.*, 753 F. Supp. 634 (S.D. Miss. 1991). Each case is based on the failure of a catheter implanted in a plaintiff's chest. In *Cather*, the plaintiff patient brought an action against a catheter manufacturer after the catheter implanted in his chest broke. The court granted the defendant manufacturer's motion for summary judgment holding that under Mississippi law, evidence that the catheter broke after it was implanted in patient's chest was insufficient to establish that the catheter was defective. *Cather*, 753 F. Supp. at 638-39. The court specifically noted:

> . . . . Upon examination of the record in this case and the materials submitted in connection with the instant Motion, the Court concludes that Plaintiff has failed to offer any evidence whatsoever, expert or otherwise, of a design or manufacturing defect in relation to the Groshong catheter and, indeed, has failed to specify the manner in which he contends the product is defective. As Defendant has pointed out, Plaintiff has simply failed to place before this Court any evidence of design or manufacturing defect other than the mere conclusory allegation that, because the catheter broke, there must have been some defect in its design or in the materials with which it was produced. While this Court is aware that, under Mississippi law, it is unnecessary to prove a specific, identifiable defect in a cause of action based on strict liability, Plaintiff must at least produce that minimal amount of circumstantial evidence that would allow a jury to infer a defective quality in the product. *Ford Motor Co. v. Matthews*, 291 So. 2d 169, 173 (Miss. 1974); *see also B F Goodrich, Inc. v. Taylor*, 509 So. 2d 895, 903 (Miss. 1987); *Price v. Admiral Corp.*, 527 F.2d 412, 415 (5th Cir. 1976). Mere proof of damage following the use of a product is not sufficient to establish liability. *William Cooper & Nephews*, 317 So. 2d at 409. The doctrine of strict liability does not make a case for the Plaintiff merely by its pleading and is not the equivalent of the doctrine of *res ipsa loquitur*, which is a distinct and separate rule of circumstantial evidence. *Powe*, 589 F. Supp. at 661. The pleading of conclusory allegations does not, standing alone, create an issue of fact before the

>Court when it is considering a motion for summary judgment, and some scintilla of evidence must be placed before the Court in order to defeat the granting of the motion. Here, Plaintiff has presented no such evidence.

*Cather*, 753 F. Supp. at 638-39.

In both instances the plaintiffs failed to present any evidence of a specific defect in the product. Both plaintiffs instead seemingly rely on *res ipso loquitur*. Alabama law specifically precludes such reliance in situations like the present one. In this case, Kirkland's affidavit states, "I always visually inspect a device before implantation, as I did in the case of Ms. Higginbotham. I did not see any evidence that the device had any visually-detectable anomaly." (Kirkland Aff. at ¶ 6). Alabama law requires that the plaintiff show that the product was defective from the time it left the manufacturer's control until it was put in use. Here such evidence is lacking. The plaintiff has not produced any explanation or evidence, from an expert or any other source, as to what the defect in the catheter was or how that defect caused the separation.

To the extent that the plaintiff appears to be asserting that the warning in this case is defective, the court finds that it need not address this matter further because the court is satisfied that the plaintiff has failed to meet the summary judgment standard with regard to a showing that the catheter is defective. Additionally, there is no evidence that the separation was caused by any defect.

## CONCLUSION

Premised on the foregoing, the defendant's motion for summary judgment is due to be granted. A separate order will be entered.

The Clerk of the Court is directed to serve a copy of this memorandum opinion upon counsel of record in this matter.

**DONE**, this the 29th day of April, 2003.

/s/ John Ott
**JOHN E. OTT**
United States Magistrate Judge

16